UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LOUIS VUITTON MALLETIER,

Plaintiff,

- v. -

DOONEY & BOURKE, INC.,

Defendant.

**PLAINTIFF LOUIS VUITTON MALLETIER'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT DOONEY & BOURKE, INC.'S MOTION FOR SUMMARY JUDGMENT**

ARENT FOX LLP
Steven Kimelman, Esq. (SK-8828)
Michael A. Grow, Esq. (admitted *pro hac vice*) (MG-7642)
Alison Arden Besunder, Esq. (AB-8772)
1675 Broadway
New York, New York 10019
Tel.: (212) 484-3900
Fax: (212) 484-3990

- and -

SHEPPARD MULLIN RICHTER & HAMPTON LLP
Theodore C. Max, Esq. (TM-1742)
Charles LeGrand, Esq. (CL-5320)
30 Rockefeller Plaza
New York, New York 10017
Tel.: (212) 332-3602
Fax: (212) 332-1201

*Counsel for Plaintiff*

February 29, 2008

**EXPLANATION OF CITATION FORMS**

The following citations are used throughout Plaintiff Louis Vuitton Malletier's Memorandum of Law in Opposition to Defendant Dooney & Bourke, Inc.'s Motion for Summary Judgment.

| ***Citation Form*** | ***Source*** |
| --- | --- |
| (SF ¶___) | Defendant Dooney & Bourke's Rule 56.1 Statement of Facts |
| (CSF ¶ __) | Plaintiff Louis Vuitton Malletier's Rule 56.1 Counterstatement of Material Facts |
| Vuitton I | Court's ruling in this action, reported at 340 F. Supp. 2d 415 (S.D.N.Y. 2004). |
| Vuitton II | Second Circuit's ruling in this action, reported at 454 F.3d 108 (2d Cir. 2006). |
| TDRA | Trademark Dilution Reform Act, 15 U.S.C. § 1125(c) |

TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..... iii

PRELIMINARY STATEMENT ..... 1

I. RULE 56 PRECLUDES SUMMARY JUDGMENT FOR DOONEY AND DOONEY'S 56.1 STATEMENT IS IMPROPER ..... 5

II. SUMMARY JUDGMENT IS IMPROPER ON THE DILUTION CLAIM BECAUSE THERE ARE GENUINE MATERIAL FACT ISSUES, AND DOONEY IS NOT ENTITLED TO JUDGMENT AS A MATTER OF LAW ..... 7

**A.** Dooney's Federal Registration Does Not Bar Louis Vuitton's Claims ..... 7

**B.** There Is a Genuine Issue as to Whether the Monogram Multicolore Marks Were Famous Before Dooney Began Using Its Diluting Marks ..... 7

**C.** Dooney's Arguments Emphasize the Genuine Issues of Material Fact on the Federal Dilution Claim ..... 8

**D.** The Evidence of Bad Faith and Actual Dilution Supports an Award of Monetary Relief on the Dilution Claims ..... 12

III. SUMMARY JUDGMENT IS IMPROPER BECAUSE THERE ARE GENUINE MATERIAL FACT ISSUES, AND DOONEY IS NOT ENTITLED TO JUDGMENT AS A MATTER ON THE INFRINGEMENT CLAIM ..... 13

**A.** There Are Genuine Issues of Material Fact as to Whether Louis Vuitton's Marks Are Strong and Entitled to the Broadest Protection ..... 13

**B.** There Are Genuine Issues of Material Fact As To Competitive Proximity of The Parties' Handbag Products ..... 14

**C.** There Are Genuine Issues of Material Fact as to How Consumers Perceive the Similarity of the Marks ..... 14

**D.** There are Genuine Issues of Material Fact as to Dooney's Willful Intent to Deceive ..... 17

**E.** There Are Genuine Issues of Material Fact as to Actual Confusion ..... 20

**F.** There Are Genuine Issues of Material Fact as to Consumer Sophistication ..... 22

G. The Evidence of Dooney's "Bad Faith" Supports a Finding of Willful Deceptiveness and Award of Monetary Relief on the Infringement Claims .........23

IV. SUMMARY JUDGMENT IS IMPROPER ON THE CLAIM FOR INJUNCTIVE RELIEF BECAUSE THERE ARE GENUINE ISSUES OF MATERIAL FACT AND DOONEY IS NOT ENTITLED TO JUDGMENT AS A MATTER OF LAW .....25

CONCLUSION .....25

# TABLE OF AUTHORITIES

Cases

AIG Int'l. Group, Inc. v. London Am. Int'l Corp.,
664 F.2d 348 (2d Cir. 1981)....5, 16, 17

A.T. Cross Co. v. Jonathan Bradley Pens, Inc.,
470 F.2d 689 (2d Cir. 1972)....17

Adjusters Int'l., Inc. v. Pub. Adjusters Int'l, Inc.,
No. 92-CV-1426, 1996 WL. 492905 (N.D.N.Y. Aug. 27, 1996)....24

Arche, Inc. v. Azaleia, U.S.A., Inc.,
882 F. Supp. 334 (S.D.N.Y. 1995)....22

Brokers' Assistant, Inc. v. Williams Real Estate Co.,
646 F. Supp. 1110 (S.D.N.Y. 1986)....6

Cache, Inc. v. M.Z. Berger & Co.,
2001 WL. 38283 at *11,15....23

Cadbury Beverages v. Cott Corp.,
73 F.3d 474 (2d Cir. 1996)....6

Cartier, Inc. v. Four Star Jewelry Creations, Inc.,
No. 01 Civ. 11295, 2003 WL. 21056809 (S.D.N.Y. May 8, 2003)....20

Cartier v. Aaron Faber, Inc.,
512 F. Supp. 2d 165 (S.D.N.Y. 2007)....25

Celotex v. Catrett,
477 U.S. 317 (1986)....5

Centaur Commc'ns, Ltd. v. A/S/M Commc'ns, Inc.,
830 F.2d 1217 (2d Cir. 1987)....9

Country Floors, Inc. v. P'ship Composed of Gepner & Ford,
930 F.2d 1056 (3d Cir. 1991)....6

Dan-Foam A/S v. Brand Named Beds, LLC,
500 F. Supp. 2d 296 (S.D.N.Y. 2007)....6, 8

Donahue v. Artisan Entm't, Inc.,
No. 00 CIV. 8326, 2002 WL. 523407 (S.D.N.Y. Apr. 8, 2002)....20

Ferrari S.p.A. Esercizio v. Roberts,
944 F.2d 1235 (6th Cir. 1991)....17

Genesee Brewing Co. v. Stroh Brewing Co.,
124 F.3d 137 (2d Cir. 1997)....25

George Basch Co. v. Blue Coral, Inc.,
968 F.2d 1532 (2d Cir. 1992)....................19, 20, 24

Goodheart Clothing Co., v. Laura Goodman Enters., Inc.,
962 F.2d 268 (2d Cir. 1992)....................6

Harold F. Ritchie, Inc. v. Cheseborough-Pond's Inc.,
281 F.2d 755 (2d Cir. 1960)....................21

Hermes Int'l. v. Lederer de Paris Fifth Ave., Inc.,
219 F.3d 104 (2d Cir. 2000)....................10, 21, 24

Jada Toys, Inc. v. Mattel, Inc.,
496 F.3d 974 (9th Cir. 2007) ....................9

Jordache Enters., Inc., v,. Levi Strauss & Co.
841 F. Supp.506 (S.D.N.Y. 1993) ....................19

Kenner Parker Toys Inc. v. Rose Art Indus., Inc.,
963 F.2d 350 (Fed. Cir. 1992)....................13

Kraft Gen. Foods, Inc. v. Allied Old English, Inc.,
831 F. Supp. 123 (S.D.N.Y. 1993) ....................24

Le Sportsac, Inc. v. K-Mart Corp.,
754 F.2d 71 (2d Cir. 1985)....................9

Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.,
799 F.2d 867 (2d Cir. 1986)....................14, 15, 21, 22

Louis Vuitton Malletier v. Burlington, (2d Cir. 2005)
426 F.3d at 532 ....................16, 20

Mastercrafters Clock & Radio Co. v. Vacheron & Constantin-Le Coultre Watches, Inc.,
221 F.2d 464 (2d Cir. 1955)....................17, 21

eBay MercExchange L.L.C.,
547 U.S. 388 (2006)....................25

Mobil Oil Corp., v. Pegasus Petroleum Corp.,
229 U.S.P.Q. 890 (S.D.N.Y. 1986)....................18

Mobil Oil Corp. v. Pegasus Petroleum Corp.,
818 F.2d 254 (2d Cir. 1987)....................13, 17, 18, 21

Morex S.p.A. v. Design Inst. Am. Inc.,
779 F.2d 799 (2d Cir. 1985)....................17

Moseley v. Victoria Secret Catalogue, Inc.,
537 U.S. 418 (2003)....................12

Nabisco, Inc. v. PF Brands, Inc.,
191 F.3d 208 (2d Cir. 1999)....................8

Natural Organics, Inc. v. Nutraceutical Corp.,
426 F.3d 576 (2d Cir. 2005)....................16

Paddington Corp. v. Attiki Imps. & Distribs., Inc.,
996 F.2d 577 (2d Cir. 1993)....................14, 17

Payless Shoesource, Inc. v. Reebok Int'l Ltd.,
998 F.2d 985 (Fed. Cir. 1993)....................23

Playboy Enters. Inc., v. Chuckleberry Publ'g, Inc.,
687 F.2d 563 (2d Cir. 1982)....................18

RVP Vitamin Prods, Inc. v. Am. Cyanamid Co., No. CV 85-2749,
1990 WL. 294261 (E.D.N.Y. Nov. 28, 1990)....................17

Sally Beauty Co. v. Beautyco, Inc.,
304 F.3d 964 (10th Cir. 2002)....................17

Savin Corp. v. Savin Group,
391 F.3d 439 (2d Cir. 2004)....................8, 21

Simon & Schuster, Inc. v. Dove Audio, Inc.,
970 F. Supp. 279 (S.D.N.Y. 1997)....................23

Something Old, Something New, Inc. v. QVC, Inc.,
No. 98 Civ. 7450, 1999 WL. 1125063 (S.D.N.Y. Dec. 8, 1999)....................5,19

Sports Authority, Inc. v. Prime Hospitality Corp.,
89 F.3d 955 (2d Cir. 1996)....................9, 16, 22

Stern's Miracle-Gro Prods., Inc. v. Shark Prods,, Inc.,
823 F. Supp. 1077 (S.D.N.Y. 1993)....................24

Streetwise Maps, Inc. v. VanDam, Inc.,
159 F.3d 739 (2d Cir. 1998)....................19, 20

Syntex Labs, Inc. v. Norwich Pharmacal Co.,
437 F.2d 566 (2d Cir. 1971)....................20

T. Anthony, Ltd. v. Louis Vuitton Malletier,
30 U.S.P.Q. 2d 1214 (S.D.N.Y. 1993)....................13,15,23,24

Versace S.p.A., v. Versace et al.,
No. 01 Civ-9645, 2003 WL. 22023946 (S.D.N.Y. Aug. 27, 2003)....................6

Louis Vuitton Malletier v. Dooney & Bourke, Inc.,
340 F. Supp. 2d 415 (S.D.N.Y. 2004)....................22

Louis Vuitton Malletier v. Dooney & Bourke, Inc.,
454 F.3d 197 (2d Cir. 2006)....................7, 11, 14, 15

W. Diversified Servs., Inc. v. Hyundai Motor Am., Inc.,
427 F.3d 1269 (10th Cir. 2005)....................19

In re Watkins Glen Int'l, Inc.,
227 U.S.P.Q. 7217 (T.T.A.B. 1985) ....................16

Williams v. Utica Coll. of Syracuse Univ.,
453 F.3d 112 (2d Cir. 2006)....................5

Statutes

15 U.S.C. § 1117(a) ....................23

15 U.S.C. § 1125(c)(5)....................8

Miscellaneous

1 J. Thomas McCarthy, Trademarks and Unfair Competition § 7:24 at 7-65 (4th ed. 2004)........16

New York Gen. Bus. Law. § 360-1 ....................24

Restatement of Law (Third) of Unfair Competition, § 25, cmt f....................10

## PRELIMINARY STATEMENT

The motion filed by Dooney & Bourke ("Dooney") violates almost every rule governing summary judgment. A court cannot resolve fact disputes when considering summary judgment. But Dooney asks the Court to do exactly that, even relying in its Rule 56.1 Statement on the factual findings in this Court's preliminary injunction decision. On this motion all facts must be viewed in a light most favorable to the non-movant Louis Vuitton Malletier ("Louis Vuitton"). But Dooney construes every fact in its favor. Credibility determinations are never appropriate for summary judgment. And even in the face of his contradictory testimony and the Holub evidence, Dooney insists that the Court must believe Peter Dooney and ignore evidence of his untruthfulness and of other material factual disputes. Only the jury may determine such fact issues.

Dooney is so eager to prove that it did not infringe the Louis Vuitton Monogram Multicolore Marks (the "Monogram Multicolore Marks"), it actually emphasizes facts that demonstrate dilution. The motion admits that Dooney knew of the Monogram Multicolore Marks when he adopted the Dooney marks. By failing to provide any declaration or explanation from Peter Dooney about that so-called design process, the motion leaves unrefuted evidence from which a jury might find that Dooney engaged in intentional dilution by copying the Monogram Multicolore colors, using color combinations in its marks similar in number to those Monogram Multicolore Marks, and using similar horizontal and diagonal rows of multicolore monograms on white and black backgrounds over the entire surface of its bags. Dooney also fails to explain the conflicting testimony about its own design process and why it kept using its similar marks after being ridiculed in the press for copying Louis Vuitton. A jury could properly conclude, based on evidence as to dilution, that Peter Dooney's scrutiny of the Monogram Multicolore Marks before and during the "It Team" trip to Italy, his subsequent copying of the

colors and other design features of these Louis Vuitton marks, and his false testimony on these subjects were part of an orchestrated plan to blur these Louis Vuitton marks for his own commercial advantage, exactly what the dilution statute prohibits.

Dooney's motion insists that the dozen or more relevant e-mails showing customer enthusiasm for the "very LV" characteristics of the Dooney bags show that customers were not confused about the source of the bags. But, because confusion is not necessary for dilution, a jury could conclude that Dooney succeeded in blurring the Monogram Multicolore Marks and that these customers bought the cheaper look alike Dooney bags to take advantage of the prestige that was uniquely associated with these Louis Vuitton marks. Dooney intended to trade on the distinctiveness and selling power of the Monogram Multicolore Marks. Thus, Dooney's own recitation of the supposed facts would allow a jury to find that it willfully and deliberately caused actual dilution. On that basis, a jury could award Dooney's profits from its misconduct, as the dilution statute provides.

Dooney's one-sided version of the facts does not govern. The sole question is whether disputed evidence on those facts preclude summary judgment, when weighed in Louis Vuitton's favor. As shown herein, there *are* many such fact disputes as to *both* dilution *and* infringement.

Despite Dooney's self-serving claims to the contrary, Dooney is not entitled to avoid liability for dilution by again making the mistake of holding up the marks for side-by-side comparison. Rather, it is for the jury to decide in light of all the evidence whether the marks are "substantially similar." Whether Dooney's "It" Bag charade demonstrates willfulness, and whether the evidence of customers who say they bought Dooney's bags because they are "very LV" proves actual or likely dilution is likewise for the jury to determine. Nor can Dooney arrogate to itself or to the Court the right to decide whether willful and actual dilution accounts

for its windfall of $100 million in sales of bags bearing "look alike" marks, and the simultaneous downturn in Louis Vuitton sales. All these material questions, both individually and together, require factual determinations inappropriate for summary judgment.

Any fair analysis of the six non-exclusive TDRA factors similarly demonstrates the existence of factual disputes:

- Whether and to what extent the marks are similar, not when improperly held side-by-side in a courtroom, but when viewed sequentially in the marketplace;
- What degree of distinctiveness the Monogram Multicolore Marks had and later gained with their "shock and awe" debut in the fashion world;
- Whether Louis Vuitton engaged in substantially exclusive use of its marks before Dooney launched its "copycat" bag;
- Whether the degree of recognition of the famous Monogram Multicolore Marks was significant;
- Whether Peter Dooney's access to, copying of, and misrepresentations relating to the Monogram Multicolore Marks show he intended to create an association with those famous marks; and
- Whether Dooney succeeded in causing the intended association between the parties' marks among purchasers.

The evidence shows that together and separately, there are material fact questions on each factor that only a jury can decide. A jury must likewise determine whether Dooney's unprecedented profits and the downturn in Louis Vuitton sales were the direct result of Dooney's misconduct.

The facts supporting a finding of infringement are equally compelling. There is powerful evidence -- disputed by Dooney but recognized by this Court and the Second Circuit -- that the Monogram Multicolore Marks are famous, inherently distinctive, and have acquired secondary meaning. There also is evidence that Dooney's marks create a likelihood of confusion among potential customers. The fact intensive Polaroid analysis demanded by this record requires a weighing of the evidence and counter-evidence that precludes summary judgment.

Thus, this case is rife with material fact questions on each Polaroid factor:

- Whether, as this Court and the Second Circuit preliminarily found, the Monogram Multicolore Marks are "strong, famous marks" entitled to the broadest protection;
- Whether the products are similar or Louis Vuitton is likely to bridge any gap;
- Whether the similarity in "overall commercial impression" of the parties' multicolored monogram marks increases the likelihood of confusion;
- Whether Peter Dooney copied the Monogram Multicolore Marks with an intent to derive benefit from Louis Vuitton's reputation;
- Whether the e-mails and other evidence show consumers were actually confused;
- Whether consumers in a pre-sale, point-of-sale or post-sale context are sophisticated to a degree that affects the likelihood of confusion analysis; and
- Whether the parties' products are of similar quality.

Of course, when considering evidence of Peter Dooney's bad faith and attempt to benefit from the Monogram Multicolore Marks, the jury must be told that a finding of intent to benefit or cause confusion justifies an inference of confusing similarity and shifts the burden to Dooney to *disprove* confusion. The point is not whether Dooney acted in bad faith; but whether there are factual disputes about it. Dooney's motion emphasizes these disputes and improperly resolves them in its own favor. This Rule 56 forbids.

A jury easily could find that Dooney's wrongdoing harmed Louis Vuitton. A jury also could conclude that Dooney adopted its marks with an intent to profit from Louis Vuitton's goodwill and to thereby deceive customers. And that justifies an award of Dooney's profits. The very evidence Dooney insisted upon in discovery, comparing Louis Vuitton's sales abroad with sales in the U.S. (the "perfect laboratory" where Dooney actually competes), proves Dooney harmed Louis Vuitton. That Dooney now disagrees, only highlights the factual dispute. In the end, a jury must determine whether Dooney caused the harm.

Summary judgment cannot be granted here without a wholesale departure from Rule 56. Only a jury can decide issues as to willful infringement and dilution shown in Dooney's own skewed account of the facts and the law, weigh evidence under the TDRA and Polaroid factors, and gauge the extent of Peter Dooney's bad faith.

## ARGUMENT

### I. RULE 56 PRECLUDES SUMMARY JUDGMENT FOR DOONEY AND DOONEY'S 56.1 STATEMENT IS IMPROPER

Dooney must prove there is "no genuine issue as to any material fact and that it is entitled to judgment as a matter of law." Fed. R. Cir. P. 56(c). An issue of fact is genuine "'if the issue is such that a reasonable jury could return a verdict for the nonmoving party.'" Williams v. Utica Coll. of Syracuse Univ., 453 F.3d 112, 116 (2d Cir. 2006). The moving party must identify "those portions of the pleading, depositions, answers to interrogatories and admissions on file that demonstrate the absence of a genuine issue of material fact." Celotex v. Catrett, 477 U.S. 317, 323 (1986).

Here, Louis Vuitton "need[s] only to establish the existence of a material factual question."[1] AIG Int'l Group, Inc. v. London Am. Int'l Corp., 664 F.2d 348, 351-52 (2d Cir. 1981). All ambiguities and reasonable inferences must be resolved in favor of Louis Vuitton, and "where a factual inference must be drawn and a reasonable trier of fact could reach a different conclusion, summary judgment is not appropriate." Something Old, Something New, Inc. v. QVC, Inc., No. 98 Civ. 7450, 1999 WL 1125063, at *8 (S.D.N.Y. Dec. 8, 1999)(Scheindlin, J.).

[1] The disputed facts in this case are set forth in Louis Vuitton's Rule 56.1 Counterstatement of Facts.

Trademark actions can rarely be determined on summary judgment. See Dan-Foam A/S v. Brand Named Beds, LLC, 500 F. Supp. 2d 296, 305 (S.D.N.Y. 2007) (Scheindlin, J.)(citations omitted). Summary judgment on likelihood of confusion is difficult because credibility assessments, choices between conflicting versions of events, and the weighing of evidence are matters for the jury. See Cadbury Beverages v. Cott Corp., 73 F.3d 474, 478 (2d Cir. 1996)("If a factual inference must be drawn to arrive at a particular finding on a Polaroid factor, and if a reasonable trier of fact could reach a different conclusion, the district court may not properly resolve that issue on summary judgment."); Dan-Foam A/S, 500 F. Supp. 2d at 305.

Dooney improperly relied upon this Court's and the Second Circuit's preliminary injunction findings in its Rule 56.1 Statement. These are not law of the case nor can they support the summary judgment motion. See Goodheart Clothing Co., v. Laura Goodman Enters., Inc., 962 F.2d 268, 274 (2d Cir. 1992), Country Floors, Inc. v. P'ship Composed of Gepner & Ford, 930 F.2d 1056, 1061-63 (3d Cir. 1991) (credibility determinations underlying fact findings are inappropriate to the legal conclusions necessary to a ruling on summary judgment). Failure to observe differing standards is "particularly significant in a trademark . . . action, where summary judgments are the exception." Id., see also Brokers' Assistant, Inc. v. Williams Real Estate Co., 646 F. Supp. 1110, 1119 & n.34 (S.D.N.Y. 1986) (rejecting defendants' heavy reliance on prior opinion denying preliminary injunction), Versace S.p.A., v. Versace et al., No. 01 Civ-9645, 2003 WL 22023946, at *1 n.2 (S.D.N.Y. Aug. 27, 2003)(excluding portions of a 56.1 statement *sua sponte* because movant improperly cited "preliminary injunction to support assertion that there is a likelihood of confusion.).

## II. SUMMARY JUDGMENT IS IMPROPER ON THE DILUTION CLAIM BECAUSE THERE ARE GENUINE MATERIAL FACT ISSUES, AND DOONEY IS NOT ENTITLED TO JUDGMENT AS A MATTER OF LAW

Dooney's emphasis on the infringement claim ironically supports Louis Vuitton's dilution claims. Moreover, the fact disputes regarding the federal and state dilution claims are underscored by sales data showing that Dooney's marks so diluted the distinctiveness of the Monogram Multicolore Marks that they dramatically diminished Louis Vuitton's U.S. Multicolore sales.

### A. Dooney's Federal Registration Does Not Bar Louis Vuitton's Claims

Dooney claims that its "DB" registration (which is not at issue) precludes Louis Vuitton's dilution claim. But the Court struck this defense in its August 7, 2007 Order, holding "[w]hile valid registration of the Dooney mark is not a complete defense, the Court will appropriately charge the jury that it may consider the facts supporting this defense when determining whether Dooney has infringed on Louis Vuitton Malletier's mark."

### B. There Is a Genuine Issue as to Whether the Monogram Multicolore Marks Were Famous Before Dooney Began Using Its Diluting Marks

Dooney has created a fact issue by claiming that the Monogram Multicolore Marks were indisputably not "famous" beyond a niche market before Dooney introduced its white multicolor mark on July 28, 2003. Dooney also erroneously contends that the niche fame standard was not in effect when the Second Circuit held in affirming this Court's previous holding:

> The new Multicolore mark was created as a source-identifier for Vuitton in the new millennium. It is a strong mark. The mark earned praise and became famous almost instantly. We agree with the district court that the Multicolore mark is protectable both because it is inherently distinctive and because it has acquired secondary meaning.

Vuitton II, 454 F.3d at 116, 118. But, "[t]he Second Circuit's requirement that 'the senior mark [must] be truly famous before a court will afford the owner of the mark the vast protections of

the FTDA' remains unchanged by TDRA's reconfiguration of the fame factors to reject both 'niche' fame and the requirement of inherent distinctiveness." Dan-Foam A/S, 500 F. Supp. 2d at 307 (quoting Savin Corp. v. Savin Group, 391 F.3d 439, 449 (2d Cir. 2004)).

### C. Dooney's Arguments Emphasize the Genuine Issues of Material Fact on the Federal Dilution Claim

Under the TDRA, Dooney must be enjoined from using its multicolor marks if the use is likely to cause "dilution by blurring " of the Monogram Multicolore Marks, regardless of whether such use also causes confusion or "actual economic injury." 15 U.S.C. § 1125(c)(5). If Dooney's use caused actual "impairment," Louis Vuitton is entitled to Dooney's resulting profits. (See Apr. 24, 2007 Order at 14). The case for dilution "rest[s] on a judgment that the 'stimulant effect' of a distinctive and well-known mark is a 'powerful selling tool' that deserves legal protection." Nabisco, Inc. v. PF Brands, Inc., 191 F.3d 208, 217 (2d Cir. 1999)(Even if use of similar mark is not likely to cause confusion, it can "'reduce[] the public's perception that the mark signifies something unique, singular, or particular.'").

To determine whether dilution under the TDRA is likely to occur, the district court must consider "all relevant factors" identified in 15 U.S.C. § 1125(c)(2)(B)(i-iv) .

*First*, the degree of similarity in the parties' marks is an issue for the jury. "The marks must be of sufficient similarity so that, in the mind of the consumer, the junior mark will conjure an association with the senior. In that manner, the junior mark will lessen the distinctiveness of the senior mark." Nabisco, Inc., 191 F.3d at 218. Here, there is ample evidence that consumers, department stores, the press, Dooney employees, and even Dooney's "It" girls recognized the close similarity between the Monogram Multicolore Marks and Dooney's "look alike LV", "very LV" and "a la Louis Vuitton" multicolored marks. (CSF ¶¶ 315-318.)

Under cases decided before and after TDRA, the marks here are similar enough to create issues of fact precluding summary judgment. See, e.g., Sports Authority, Inc. v. Prime Hospitality Corp., 89 F.3d 955, 967 (2d Cir. 1996)(genuine issue of fact as to similarity of plaintiff's THE SPORTS AUTHORITY and defendant's "Sports Authority: Food, Spirits & Sports" marks); Jada Toys, Inc. v. Mattel, Inc., 496 F.3d 974, 981 (9th Cir. 2007).

*Second*, the "degree of inherent or acquired distinctiveness" of the Monogram Multicolore Marks was apparent to both this Court and the Second Circuit after weighing the evidence of record at that time. Dooney now claims that this factor, without proof of harm, is insufficient to support a finding of dilution. (See Dooney Br. at 18.) Dooney thus recognizes that this factor must be weighed with other factors to determine if dilution has occurred, which only a jury can do. (CSF ¶¶ 311-12, 315.)

*Third*, Dooney challenges the extent to which Louis Vuitton has "engaged in substantially exclusive use" of its Monogram Multicolore Marks because of alleged sales of bags bearing counterfeit marks. This again creates an issue of fact. Dooney has offered no direct evidence of third party use or counterfeiting and only a jury can determine what impact any such illegal activity has had on the marks.[2] And Louis Vuitton has vigorously policed its rights. (CSF ¶ 329.) Moreover, widespread copying of a mark is strong evidence of the acquired distinctiveness and fame of a mark. See, e.g., Centaur Commc'ns, Ltd. v. A/S/M Commc'ns, Inc., 830 F.2d 1217, 1222 (2d Cir. 1987); Le Sportsac, Inc. v. K-Mart Corp., 754 F.2d 71, 78 (2d Cir. 1985).

[2] Dooney itself is a counterfeiter and has sold bags bearing counterfeit versions of the Louis Vuitton S-Lock mark. (CSF ¶ 310.) It should not be permitted to justify its own misdeeds by citing the illegal activity of others.

*Fourth,* Dooney's argument concerning the "degree of recognition" of the Monogram Multicolore Marks supports rather than undermines the claim for dilution. (Dooney Br. at 17.) The testimony of Louis Vuitton's CEO, Yves Carcelle (CSF ¶ 192) and other witnesses as to the advertising, publicizing and widespread recognition of the marks (CSF ¶¶ 311, 315, 330), is unrebutted and underscores the risk of dilution from competitors like Dooney that engage in illegal "free riding." The harm caused by dilution is not that consumers cease to "recognize" a famous mark but rather that the mark will lose its exclusivity and distinctiveness by virtue of such free riding. See Restatement of Law (Third) of Unfair Competition, § 25, cmt f. A jury could find from the evidence that the Monogram Multicolore Marks are highly recognized. (CSF ¶ 311, 315, 330.)

*Fifth*, that Dooney "intended to create an association" between its marks and those of Louis Vuitton is evident from the numerous references to Dooney's marks as "look alike LV" or "very LV". (CSF ¶¶ 315, 331.) Dooney essentially concedes this when it implies that Dooney may have intended to copy the "look" and colors of the Louis Vuitton marks. (Dooney Br. at 7.) While intent is a jury question, Dooney claims this is "inactionable." But Dooney copied more than colors alone. Dooney had knowledge of Louis Vuitton's strong and famous Monogram Multicolore Marks and the unprecedented consumer demand generated by the marks. Dooney's adoption of "look alike LV" multicolored marks to benefit unfairly from the association with the Monogram Multicolore Marks is further shown by his monitoring of knock-offs of these marks. Dooney also took steps to imitate the Monogram Multicolore Marks by creating false waitlists to further reinforce the mental association with Louis Vuitton and the Monogram Multicolore Marks. (CFS ¶ 309.)

The Holub evidence shows that Dooney copied the unique colors and color combinations in the Louis Vuitton marks along with the horizontal and diagonal rows and black and white backgrounds. (CSF ¶ 300-04.) This evidence shows, given the rainbow of color options available: (i) the colors Dooney chose for the most part are exceedingly close to the corresponding colors of the Monogram Multicolore Marks; (ii) the dual overlapping colors for each Dooney monogram creates the impression that there are more than the 9 and 7 basic colors for the white and black background marks; and (iii) out of the 72 and 42 available pairs of color combinations for the white and black bags, Dooney employed only 29 and 32 pairings, respectively and these totals are quite close to the 33 colors in Louis Vuitton's white and black Monogram Multicolore Marks. (CSF ¶ 300.) There is nothing in the record from Peter Dooney explaining these similarities and a jury should be allowed to determine whether this was the result of coincidence or a deliberate intent to dilute and profit from the Monogram Multicolore Marks.

*Sixth*, the degree of "actual association" between Dooney's marks and the Monogram Multicolore Marks also requires a weighing of evidence by the jury. The association evidence includes: (a) media reports which identify Dooney as the "poor woman's" or "poor man's Louis Vuitton"; (b) correspondence showing mental impressions of retailers, customers, Dooney employees, and "It" girls who cite Dooney's "It" bags as "very LV"; and (c) verbatim responses of survey respondents who saw Dooney's bags bearing its multicolor marks in a post-sale and initial interest context and drew an association with Louis Vuitton.[3] (CSF ¶¶ 333-34.) This potent associational evidence raises questions for the jury.

---

[3] The Second Circuit held in Vuitton II, the trademarks at issue are not hard to define. Dooney's repeated attempts to muddy the waters by claiming the "look" of the Monogram

**D. The Evidence of Bad Faith and Actual Dilution Supports an Award of Monetary Relief on the Dilution Claims**

Disputed issues of fact as to Dooney's wrongful intent, misrepresentations, evidence destruction and willful deceptiveness (CSF ¶¶ 297-310, 332), also preclude summary dismissal of Louis Vuitton's claims for monetary relief, because of the actual dilution of Monogram Multicolore Marks. When inferences are properly drawn in Louis Vuitton's favor, a jury could find monetary relief appropriate on the dilution claims.

Prior to the enactment of the TDRA, the Supreme Court held that, "the consequences of dilution, such as an actual loss of sales or profits," need not be proven, but something more than evidence of mere "mental association" is required. Moseley v. Victoria Secret Catalogue, Inc., 537 U.S. 418, 433 (2003). Louis Vuitton must show that Dooney's mark has "lessened the capacity" of the Multicolore Marks "to identify and distinguish" Louis Vuitton's products. Id.

Summary judgment is improper on Louis Vuitton's dilution damages claims because there is ample evidence on which a jury could find that Dooney's conduct has caused actual dilution of the Monogram Multicolore Marks: (a) consumers have come to view Dooney products bearing its multicolor marks as a less expensive, alternate source for Louis Vuitton products; (b) Monogram Multicolore sales declined in the U.S. relative to non-U.S. sales and there is no plausible explanation for this other than the sale of Dooney products bearing similar multicolored monogram marks; and (c) the evidence shows "mental association," and actual harm to the Monogram Multicolore Marks in the U.S. This is all the direct result of the diluting effect that Dooney's look alike marks have had on the distinctiveness and selling power of the Monogram Multicolore Marks. The degree to which the Monogram Multicolore Marks identify

Multicolore Marks is separable from the marks themselves is disingenuous and ignores the point that both parties marks cover the entire surface of their bags.

only the source of Louis Vuitton's goods is diminished. This is corroborated by statements that Dooney products are "very LV" or that consumers view or bought Dooney products as "knock-off" or cheaper versions of the Multicolore products. (CSF ¶¶ 333-34.) Consumers who want the exclusivity, prestige and status that the Monogram Multicolore Marks symbolize now have a choice: they can buy a Monogram Multicolore bag or pay Dooney for a "look alike LV". The Monogram Multicolore Marks no longer identify only Louis Vuitton as a source; the "distinctiveness" of those marks has been lost.

The jury should be permitted to weigh the disputed evidence and decide whether dilution has occurred or is likely. A reasonable jury certainly *could* make such a finding.

## III. SUMMARY JUDGMENT IS IMPROPER BECAUSE THERE ARE GENUINE MATERIAL FACT ISSUES, AND DOONEY IS NOT ENTITLED TO JUDGMENT AS A MATTER ON THE INFRINGEMENT CLAIM

Disputed issues of fact as to Dooney's infringing acts also preclude summary judgment. Drawing all inferences in favor of Louis Vuitton, a reasonable jury could easily find that Dooney's monogram multicolor marks are likely to cause initial interest and post sale confusion.

### A. There Are Genuine Issues of Material Fact as to Whether Louis Vuitton's Marks Are Strong and Entitled to the Broadest Protection

Dooney does not concede that the Monogram Multicolore Marks are strong, inherently distinctive, and have obtained secondary meaning and fame. Therefore, a genuine issue of fact exists on this important Polaroid factor. A mark's strength, measured by the degree to which it indicates the source of the product, is "among the most important factors . . . because the stronger the mark the more protection it is afforded." T. Anthony, Ltd. v. Louis Vuitton Malletier, 30 U.S.P.Q.2d 1214, 1217 (S.D.N.Y. 1993), Mobil Oil Corp. v. Pegasus Petroleum Corp., 818 F.2d 254, 257-58 (2d Cir. 1987); Kenner Parker Toys Inc. v. Rose Art Indus., Inc., 963 F.2d 350, 353

(Fed. Cir. 1992)("[A] strong mark . . . casts a long shadow which competitors must avoid. . . . As a mark's fame increases, the Act's tolerance for similarities in competing marks falls. . . .").

The Monogram Multicolore Marks have only become more famous since the earlier finding of this Court and the Second Circuit that these marks are strong, inherently distinctive, and have achieved secondary meaning. (See CSF ¶¶ 311-312.) Unrefuted by Dooney, this evidence weighs heavily in favor of a finding of likely confusion and requires jury consideration at the very least.

**B. There Are Genuine Issues of Material Fact As To Competitive Proximity of The Parties' Handbag Products**

Dooney has not conceded that the "competitive proximity" of the parties' products weighs in favor of finding likelihood of confusion. (SF ¶¶ 22, 35.) This creates another issue of fact because there is ample evidence in the record to support such a finding because the parties both use their marks on handbags and related products with overlapping prices offered to the same potential customers, often within the same shopping malls. See Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co., 799 F.2d 867, 874, 878 (2d Cir. 1986)(products may be proximate notwithstanding different price points). (CSF ¶¶ 313-14.) The evidence that supported the Court's finding on this point at the preliminary injunction stage must be weighed by a jury in favor of Louis Vuitton.[4] Id.

**C. There Are Genuine Issues of Material Fact as to How Consumers Perceive the Similarity of the Marks**

Dooney improperly restricts its similarity analysis to a point-of-sale, side-by-side dissection of the marks. (See Dooney Br. at 9-10.) As the Second Circuit held in Vuitton II, the

[4] Because likelihood of confusion is enhanced by the similarity of the products, i.e., handbags, there is no "gap to bridge," and this factor need not be considered . See, e.g., Paddington Corp. v. Attiki Imps. & Distribs., Inc., 996 F.2d 577, 586 (2d Cir. 1993).

proper focus with regard to similarity of marks should be on how the trademarks at issue are viewed in the marketplace context: "Courts should keep in mind that in this context the law requires only confusing similarity, not identity. [W]here, as here, the plaintiff claims initial-interest and post-sale confusion, market conditions must be examined closely to see whether the differences between the marks are 'likely to be memorable enough to dispel confusion on serial viewing." Vuitton II, 454 F.3d at 117.

There is considerable evidence in the record showing the high degree to which consumers perceive a similarity in the marks. (CSF ¶ 315.) The marks at issue here are analogous to those described in T. Anthony, Ltd., 30 U.S.P.Q.2d at 1217, where the court found a defendant's "TA" monogram created the same commercial impression as the Louis Vuitton mark. "As one draws more than a few feet away from the TA monogram design, its various distinctive elements (e.g., the letters on the compass) become largely undetectable and the general impression of the pattern is that it is the Louis Vuitton mark." Id.[5]

The alleged differences in the parties' marks here are not likely to be detectable or memorable because: (i) Dooney's use of interlocking letters with different sometimes faint colors makes them indiscernible; (ii) Dooney's monogram elements use curved letters that appear rounded, and Louis Vuitton's mark includes the rounded motifs of its traditional Toile Monogram mark; (iii) the monogram elements are relatively small vis-à-vis the bags on which they appear, and are displayed in evenly spaced horizontal and diagonal rows across the entire surface of the bags; (iv) in its marks, Dooney uses a similar number of color combinations with a horizontal and diagonal pattern of monograms and the same white and black backgrounds used

---

[5] See also Lois Sportswear, U.S.A., Inc., 799 F.2d at 872 (defendant's labeling may prevent confusion at the point of sale but "does nothing to alleviate other forms of confusion that are equally actionable.").

by Louis Vuitton; and (v) both parties display the color elements in their marks in two sizes. (CSF ¶¶ 89, 300-01, 315.) Because there is a dispute as to whether the alleged differences in the marks will be apparent to purchasers post-sale, the jury must decide this issue.[6] Dooney previously conceded that the similarity of the marks is a question for the jury.[7] Dooney's use of its "DB" monogram does not mandate summary judgment.

Dooney erroneously asserts that Louis Vuitton cannot claim rights in a "look" and that Louis Vuitton's statement that the "look" is the mark improperly seeks to advance a trade dress claim. (Dooney Br. at 10.) As Dooney concedes, the jury must evaluate the overall similarity in the look of the colors, design formats, and overall commercial impression of the parties' marks, which cover the entire surface of their respective products. To the extent the "look" is part of the Monogram Multicolore Marks, the "look" is inseparable from the trademarks themselves. In fact, the "look" of a mark is often central to its source identifying character. 1 J. Thomas McCarthy, Trademarks and Unfair Competition § 7:24 at 7-65 (4th ed. 2004)("If customers perceive a design as not only attractive, but as an indicator of source, then it is a trademark."). See also Id. at 7-69, n.21 (citing In re Watkins Glen Int'l, Inc., 227 U.S.P.Q. 7217 (TTAB 1985)). Whether the Dooney marks call to mind the Monogram Multicolore Marks is also a question for the jury. See Louis Vuitton Malletier v. Burlington, 426 F.3d at 532. (2d Cir. 2005).

---

[6] Sports Auth., Inc. v. Prime Hospitality Corp., 89 F.3d 955, 962-63 (2d Cir. 1996); Natural Organics, Inc. v. Nutraceutical Corp., 426 F.3d 576, 579-80 (2d Cir. 2005); AIG, 664 F.2d at 352;

[7] In unsuccessfully seeking to exclude the testimony of Louis Vuitton's color expert, Richard A. Holub, Ph.D. Dooney argued: "[T]he jury in this case will be tasked with deciding whether there is a likelihood of confusion between the Louis Vuitton and Dooney bags; this is something the jury can – and must – do, after considering all the evidence, including its own observation of the same bags that Dr. Holub observed." (Dooney Br. at 10.)

## D. There are Genuine Issues of Material Fact as to Dooney's Willful Intent to Deceive

A finding of bad faith creates a presumption of confusion.[8] In considering "bad faith," the law does not look with "favor on the businessman who, out of the wealth of [marks] available, chooses as a trademark one which comes as close as he dares to a well-known mark on the identical product." A.T. Cross Co. v. Jonathan Bradley Pens, Inc., 470 F.2d 689, 692 (2d Cir. 1972); "Intentional copying gives rise to a presumption of a likelihood of confusion." Mobil Oil Corp. 818 F.2d at 258; AIG, 664 F.2d at 353 (good faith is "singularly inappropriate for determination" under Rule 56).

If a defendant adopts a mark with the intent of deriving benefit from the reputation of a plaintiff, that fact alone may be sufficient to justify an inference of confusing similarity. Ferrari S.p.A. Esercizio v. Roberts, 944 F.2d 1235, 1242 (6th Cir. 1991). "This is especially true in cases, such as this one, where the defendant sold a comparatively cheap imitation of an expensive, exclusive item." Id. at 124; Mastercrafters Clock & Radio Co. v. Vacheron & Constantin-Le Coultre Watches, Inc., 221 F.2d 464, 467 (2d Cir. 1955). Dooney knew that customers would buy bags bearing its multicolor marks because of their post-sale resemblance to the famous Monogram Multicolore Marks. (CSF ¶¶ 315, 333.)

A question as to intent may itself be enough to defeat summary judgment. See, e.g., Sally Beauty Co. v. Beautyco, Inc., 304 F.3d 964, 976 (10th Cir. 2002); RVP Vitamin Prods, Inc. v. Am. Cyanamid Co., No. CV 85-2749, 1990 WL 294261, at *1 (E.D.N.Y. Nov. 28, 1990)(concession that choice of similar marks was aimed at benefiting from senior user's

---

[8] See, e.g., Paddington Corp., 996 F.2d at 586-87 (2d Cir. 1993); Morex S.p.A. v. Design Inst. Am. Inc., 779 F.2d 799, 802 (2d Cir. 1985)("the second comer will be presumed to have intended to create a confusing similarity of appearance and will be presumed to have succeeded").

reputation "by itself is sufficient to call for a trial on the merits because it spawns the strong inference that a likelihood of confusion would result from the intended similarity of the marks"). The record is replete with genuine issues of material facts as to whether Dooney adopted its multicolor marks with the intention of capitalizing on Louis Vuitton's reputation and goodwill. (CSF ¶¶ 297-310.)

Dooney now admits it knew of the famous Monogram Multicolore Marks when it created its own white and black multicolor marks. (CSF ¶ 298.) Yet, it chose to copy the colors and most of the memorable features of the Monogram Multicolor Marks. A finding of bad faith is more likely where a defendant copies a strong mark of which it had (or may be presumed to have had) knowledge. See, e.g., Mobil Oil Corp., 229 U.S.P.Q. 890, 894 (S.D.N.Y. 1986), aff'd, 818 F.2d 254 (2d Cir. 1987). Dooney was so concerned about the similarity between its marks and the Monogram Multicolore Marks that it monitored Louis Vuitton's enforcement activities even before receiving the demand to stop using infringing marks. (CSF ¶ 305.) Even after discovering that consumers, members of the fashion media, and its own employees drew an association between its marks and the Monogram Multicolore Marks which made initial interest and post-sale confusion more likely, Dooney was making too much money to stop.

An inability to explain similarities in marks or inconsistent or dubious testimony from key witnesses as to selection or creation of marks is further evidence of bad faith. See, e.g., Mobil Oil Corp., 818 F.2d at 258-59 (testimony of experienced businessman that similar mark was adopted without knowledge of or reference to plaintiff's mark was unbelievable); Playboy Enters. Inc., v. Chuckleberry Publ'g, Inc., 687 F.2d 563, 569-70 (2d Cir. 1982)(defendant's President failed to provide credible explanation for derivation and use of mark). Dooney's lack of candor and any credible documentation as to its "creative" process (and its failure to offer any

Dooney declaration) support the inference that Dooney intentionally avoided, hid, or destroyed evidence. A defendant's conduct during suit may contribute to a finding of bad faith. Something Old, Something New, 1999 WL 1125063, at *7.

The record shows genuine material issues of fact as to (among other things): (i) whether Dooney preselected the infringing marks and used the "It Team" as a smokescreen to deceive the public; (CSF ¶¶ 299-300, 306); (ii) whether Dooney created false waiting lists to confuse the public into associating its bags with those sold under the Monogram Multicolore Marks (CSF ¶¶ 309); (iii) whether Dooney refused to take action to mitigate confusion and dilution after learning that customers, employees, and the media were commenting on the striking similarity between Dooney's marks and the Monogram Multicolore Marks (CSF ¶¶ 315, 333); (iv) whether Dooney adopted its marks with the intent to capitalize on the fame and selling power that the Monogram Multicolore Marks had attained (including recognition as the "It" bag of the year) (CSF ¶ 307); (v); whether Dooney counterfeited the Louis Vuitton's "S-Lock" Marks as part of an overall scheme to profit from Louis Vuitton's goodwill. (CSF ¶ 310.)[9] Drawing all fair inferences in Louis Vuitton's favor, there are genuine material issues of fact on the intent factor that preclude summary judgment. (CSF ¶¶ 297-310).

Dooney improperly relies on George Basch Co. v. Blue Coral, Inc., 968 F.2d 1532, 1541 (2d Cir. 1992) and Streetwise Maps, Inc. v. VanDam, Inc., 159 F.3d 739, 745 (2d Cir. 1998) for the proposition that "[a]bsent confusion, imitation of certain successful features in another's product is not unlawful to that extent a 'free ride' is permitted." In each of those cases, the court found the trade dress at issue was not protectable. Basch, 968 F.2d at 1541. In Streetwise, the

[9] See, e.g., Jordache Enters., Inc. v. Levi Strauss & Co., 841 F. Supp. at 519 & n.16 (jury should consider evidence that defendant had infringed plaintiff's marks other than those at issue in current case); W. Diversified Servs., Inc. v. Hyundai Motor Am., Inc., 427 F.3d 1269, 1277 (10th Cir. 2005) (same).

court found no evidence of an attempt to ride the coattails of the plaintiff. 159 F.3d at 745-46. Unlike the defendants in those cases, Dooney copied colors, color combinations and other protectable design features of the Monogram Multicolore Marks. Because there is compelling evidence of an intent to copy these marks, not the design features of the Louis Vuitton products, coupled with an intent to derive benefit from the fame of the Monogram Multicolore Marks, a jury could presume that Dooney acted in bad faith.

### E. There Are Genuine Issues of Material Fact as to Actual Confusion

Dooney's allegations as to the absence of "actual confusion" at the point of sale create another issue of fact.[10] Donahue v. Artisan Entm't, Inc., No. 00 CIV. 8326, 2002 WL 523407, at *9 (S.D.N.Y. Apr. 8, 2002) (although the evidence of actual confusion submitted by the plaintiffs is minimal, drawing all inferences in the plaintiffs' favor, a trier of fact could conclude that there was actual confusion). Moreover, such evidence is not an absolute litmus test for trademark infringement. The Lanham Act "outlaw[s] the use of trademarks which are likely to cause confusion, mistake, or deception **of any kind**, not merely of purchasers nor simply as to source of origin." Syntex Labs, Inc. v. Norwich Pharmacal Co., 437 F.2d 566, 568 (2d Cir. 1971), (emphasis added), Cartier, Inc. v. Four Star Jewelry Creations, Inc., No. 01 Civ. 11295, 2003 WL 21056809, at *11 (S.D.N.Y. May 8, 2003).

Contrary to Dooney's claims, "point-of-sale confusion is not the *only* confusion that the Lanham Act seeks to prevent; other forms of confusion, including reverse confusion, initial interest confusion and post-sale confusion may also be actionable." Burlington Coat Factory, 426 F.3d at 539 n.4 (emphasis in original). Courts have found confusion in cases involving

[10] Dooney cannot rely on absence of actual confusion in view of its failure to preserve e-mails and other records that may have shown numerous instances of such confusion. (CSF ¶42.)

handbags where a manufacturer "offers consumers a cheap knockoff copy of the original manufacturer's more expensive product, thus allowing a buyer to acquire the prestige of owning what appears to be the more expensive product" and harming purchasers who "may believe that the knockoff is actually the genuine article"). See Hermes Int'l v. Lederer de Paris Fifth Ave., Inc., 219 F.3d 104, 108 (2d Cir. 2000); Mastercrafters Clock & Radio Co. v. Vacheron & Constantin-Le Coultre Watches, Inc., 221 F.2d 464, 466 (2d Cir. 1955) (sale of knockoff created additional harm even though buyers knew they bought a knockoff because public may assume the knockoff was a genuine product at a distance).

It is precisely this type of confusion that Dooney has deliberately caused in this case. Neither the Lanham Act nor Second Circuit precedent requires actual confusion to preclude a jury trial, especially given the difficulty of obtaining actual confusion evidence of initial interest and post sale confusion Harold F. Ritchie, Inc. v. Cheseborough-Pond's Inc., 281 F.2d 755, 761 (2d Cir. 1960)("Actual confusion or deception of purchasers is not essential to a finding of trademark infringement or unfair competition, it being recognized that 'reliable evidence of actual instances of confusion is practically impossible to secure.'") (citations omitted); Lois Sportswear, 799 F.2d at 875 ("[I]t is black letter law that actual confusion need not be shown to prevail under the Lanham Act"). The absence of such evidence matters least in initial interest, post-sale, and associational confusion cases. See, e.g., Mobil Oil Corp., 818 F.2d at 259-60.

Moreover, Louis Vuitton has obtained additional actual confusion evidence since the preliminary injunction stage. (CSF ¶¶320-21.) Even a few instances of actual confusion are sufficient to raise a jury question or to tip this Polaroid factor in the plaintiff's favor. See, Savin Corp. v. The Savin Group, 391 F.3d 439, 459 (2d Cir. 2004) ("There can be no more positive or substantial proof of likelihood of confusion than proof of actual confusion. Moreover, [r]eason

tells us what while very little proof of actual confusion would be necessary to prove the likelihood of confusion, an almost overwhelming amount of proof would be necessary to refute such proof") (citing World Carpets, Inc. v. Dick Littrel's New World Carpets, 438 F.2d 482, 489 (5th Cir. 1971); IMS Ltd. v. Int'l Med. Sys., Inc., No. 84 CV 4126, 1986 WL 9692, at *8 (E.D.N.Y. June 30, 1986) (Scheindlin, J.) (two instances of confusion in over three years held "persuasive proof of the likelihood of future confusion" and warranting finding for plaintiff on this factor); Cache, Inc. v. M.Z. Berger & Co., No. 99 CIV. 12320, 2001 WL 38283 at *9 (S.D.N.Y. Jan. 16, 2001)(holding that five instances of actual confusion could lead a trier of fact to conclude actual confusion existed between the two trademarks).[11]

The Court may not weigh the evidence here, as it did under Rule 65. Its task is limited to determining whether there are factual questions for a jury to consider, and it must construe all evidence and inferences in Louis Vuitton's favor. See, e.g., Sports Auth., Inc., 89 F.3d at 964.

**F. There Are Genuine Issues of Material Fact as to Consumer Sophistication**

There are genuine issues of fact as to customer sophistication, as evidenced by the conflicting statements of fact adduced earlier. See Vuitton I, 340 F. Supp. 2d at 434. Moreover, the significance of this factor depends on the circumstances and the nature of the confusion at issue. See, e.g., Lois Sportswear, U.S.A., 799 F.2d at 875 ("[I]t is a sophisticated jeans consumer who is most likely to assume that the presence of [plaintiff's] trademark stitching pattern on [defendants'] jeans indicates some sort of association between the two manufacturers."); Payless Shoesource, Inc. v. Reebok Int'l Ltd., 998 F.2d 985, 989-90 (Fed. Cir. 1993). T. Anthony, Ltd.,

[11] This Court has previously held that the testimony of a survey interviewer and the persons she interviewed may be admissible as evidence of actual confusion, even where the survey itself was excluded. See Arche, Inc. v. Azaleia, U.S.A., Inc., 882 F. Supp. 334, 337 (S.D.N.Y. 1995)("[I]f evidence by these survey respondents would have any tendency to establish that some people probably were confused as to the source of the defendant's shoes, then the evidence is relevant and admissible.").

30 U.S.P.Q.2d at 1218 ("sophistication of direct purchasers has no effect upon potential for post-sale confusion"). Moreover, the record shows that teenage consumers to whom Dooney's "It Bags" were targeted are not sophisticated, especially with regard to Internet purchases. (CSF ¶¶ 322-24). A jury should weigh the conflicting evidence on this factor along with the others in assessing post-sale or initial interest confusion.

**G. The Evidence of Dooney's "Bad Faith" Supports a Finding of Willful Deceptiveness and Award of Monetary Relief on the Infringement Claims**

Disputed issues of fact as to Dooney's wrongful intent, misrepresentations, evidence destruction and willful deceptiveness (CSF ¶¶ 297-310) also preclude summary dismissal of Louis Vuitton's claims for monetary relief, even under the Court's interpretation of 15 U.S.C. § 1117(a). When inferences are properly drawn in Louis Vuitton's favor, a jury could find monetary relief appropriate on the infringement claims.

Summary judgment on willful deceptiveness is precluded by the evidence showing disputes as to (a) Dooney's "bad faith" copying of Louis Vuitton's marks and its free ride on the valuable goodwill; (b) Dooney's attempt to deceive the public by fabricating a story as to the creation of its multicolor marks; and (c) the conflicts in Peter Dooney's testimony and that of other employees such as Maurizio Nottoli. (CSF ¶¶ 297-310.) Dooney cannot get its story straight and these inconsistencies raise serious credibility and deceit issues that only the jury can decide. See, e.g., Simon & Schuster, Inc. v. Dove Audio, Inc., 970 F. Supp. 279, 299, 301–02 (S.D.N.Y. 1997) (earlier bad faith finding and failure to be forthright about or provide credible explanation for copying supported willful deceptiveness finding and accounting of defendant's profits); Cache, Inc. v. M.Z. Berger & Co., No. 99 Civ 12320 (JGK), 2001 WL 38283, at *111, 15 (factual issue as to Polaroid bad faith created factual issue as to willful deceptiveness); Adjusters Int'l, Inc. v. Pub. Adjusters Int'l, Inc., No. 92-CV-1426, 1996 WL 492905, at *12–13,

16 (N.D.N.Y. Aug. 27, 1996).[12] Discovery in this case has uncovered significant evidence of willful deceit that was not before the Court previously. See e.g., Holub Dec.; Nottoli Dep; Legrand Dec Ex. M,T, EE.

Dooney not only sought to infringe and blur the distinctiveness of the Monogram Multicolore Marks but it also deceived the public through marketing tactics and "look alike LV" marks adopted to spur on sales. These facts support an inference that Dooney copied the overall commercial impression and distinctive colors and design features of the Monogram Multicolore Marks with intent to deceive. Dooney's marks contain enough similarities to cause initial interest and post sale confusion. Like the infringers in T. Anthony and Hermes, Dooney knew that consumers would buy its knockoffs because of the close similarities between its marks and the famous Louis Vuitton marks. Many consumer may have purchased the Dooney "It Bag" to achieve the status of owning "a look alike LV" Monogram Multicolore bag at a knock-off price. That Dooney's own employees knew of this post-sale confusion, and no action was taken, is sufficient evidence of Dooney's willful intent to support a finding of post sale confusion. See Hermes Int'l, 219 F.3d at 108-109 (CSF ¶¶ 315, 333). Viewed properly, the inference of willful deceptiveness is significant and creates issues of fact that preclude summary judgment.[13]

---

[12] The evidence of Dooney's bad faith also supports a finding of "predatory intent," which is an element of a dilution claim under New York law. See, e.g., New York Gen. Bus. Law § 360-1 (McKinney); Kraft Gen. Foods, Inc. v. Allied Old English, Inc., 831 F. Supp. 123, 135 (S.D.N.Y. 1993) ((knowledge of plaintiff's well known mark and failure to take action after receiving objection raises serious questions about defendant's predatory intent); Stern's Miracle-Gro Prods., Inc. v. Shark Prods,, Inc., 823 F. Supp. 1077, 1092 (S.D.N.Y. 1993)

[13] Under Basch, the following factors support an accounting of Dooney's profits. *First*, Dooney has profited from its imitation of the Louis Vuitton marks. The "It" Bags are the biggest seller ever -16% of its total sales in 2003. *Second*, no other relief is adequate to remedy Louis Vuitton's injuries or to deter Dooney. An injunction alone would be a slap on the wrist. *Third*, the Court properly rejected Dooney's laches defense. *Fourth*, there is no evidence that Louis Vuitton has acted improperly in bringing this action.

## IV. SUMMARY JUDGMENT IS IMPROPER ON THE CLAIM FOR INJUNCTIVE RELIEF BECAUSE THERE ARE GENUINE ISSUES OF MATERIAL FACT AND DOONEY IS NOT ENTITLED TO JUDGMENT AS A MATTER OF LAW

Dooney's final argument is that Louis Vuitton cannot prove irreparable injury because Louis Vuitton opted for an award of Dooney's profits and did not reapply for preliminary injunctive relief after the Second Circuit remanded the case in 2006. Dooney cites no case law for this novel contention other than vague principles of equity.[14]

Louis Vuitton opted to get the case to trial swiftly rather than filing another motion. Dooney's slapdash summary judgment motion shows that Dooney wants to prolong this case and avoid trial at any cost. Injunctive relief is appropriate because "In cases of trademark infringement, a showing of likelihood of confusion establishes the element of irreparable harm." Cartier v. Aaron Faber, Inc., 512 F. Supp.2d 165, 171 (S.D.N.Y. 2007) (citing Genesee Brewing Co. v. Stroh Brewing Co., 124 F.3d 137, 142 (2d Cir. 1997)). (CSF ¶¶ 335-36).

## CONCLUSION

For all the foregoing reasons, the Court should deny Dooney's summary judgment motion in its entirety and schedule a trial at the earliest possible date.

[14] Dooney's reliance on eBay v. MercExchange L.L.C., 547 U.S. 388 (2006) is misplaced. That case involved the two-part test as applied under the Patent Act. If the inferences afforded in a trademark infringement and dilution action are drawn in Louis Vuitton's favor, a jury should consider permanent injunctive relief, given the egregious nature of the copying and cover-up by Dooney.

Respectfully submitted,

ARENT FOX LLP

By: ______________________

Steven Kimelman, Esq. (SK8828)
Michael A. Grow, Esq. (MG7642)
Alison Arden Besunder (AB8772)
1675 Broadway
New York, New York 10019
Tel.: (212) 484-3900
Fax: (212) 484-3990

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

Theodore C. Max, Esq. (TM1742)
Charles LeGrand, Esq. (CL5320)
30 Rockefeller Plaza, Suite 2400
New York, NY 10112
Tel.: (212) 332-3602
Fax: (212) 332-1201

Counsel for Plaintiff