REDACTED FOR PUBLIC FILING

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

LOUIS VUITTON MALLETIER,

                Plaintiff,

vs.

DOONEY & BOURKE, INC.,

                Defendant.

ECF CASE

04 Civ. 2990 (SAS)

## DOONEY & BOURKE'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Douglas D. Broadwater
Roger G. Brooks
Darin P. McAtee
CRAVATH, SWAINE & MOORE LLP
825 Eighth Avenue
New York, NY 10019
(212) 474-1000

-and-

THOMAS J. McANDREW & ASSOCIATES
Thomas J. McAndrew, Esq.
One Turks Head Place, Suite 205
Providence, RI 02903
(401) 455-0350

*Attorneys for Defendant Dooney & Bourke, Inc.*

April 7, 2008

<u>Citation Conventions</u>

| <u>Citation Form</u> | <u>Source</u> |
|---|---|
| "Op. at __" | Plaintiff Louis Vuitton Malletier's Memorandum of Law in Opposition to Defendant Dooney & Bourke, Inc.'s Motion for Summary Judgment, filed March 24, 2008. |
| "Br. at __" | Dooney & Bourke Memorandum of Law in Support of Its Motion for Summary Judgment, filed January 15, 2008. |
| "R&R at __" | Report and Recommendation of the Special Masters, Professors Barton Beebe and Daniel Capra, dated June 15, 2007. |
| "Cornell Decl." | The Declaration of Bradford Cornell, dated April 7, 2008 and submitted herewith. |
| "CSF ¶ __" | Plaintiff's Local Rule 56.1 Counterstatement of Material Facts, filed March 21, 2008. |
| "Selb Ex. __" | The Declaration of Jessica L. Selb In Support of Dooney & Bourke's Motion for Summary Judgment, filed January 15, 2008. |
| "SF ¶ __" | Dooney & Bourke's Statement of Undisputed Material Facts Pursuant to Local Civil Rule 56.1, filed January 15, 2008. |
| "S-Lock Order at __" | Memorandum & Order, dated December 22, 2006, of United States Magistrate Judge Michael H. Dolinger, so ordered in the pending action <u>Louis Vuitton Malletier v. Dooney & Bourke, Inc.</u>, No. 04 Civ. 5316 (RMB) (MHD). |

# TABLE OF AUTHORITIES

**Page(s)**

CASES

A.T. Cross Co. v. Jonathan Bradley Pens, Inc., 70 F.2d 689 (2d Cir. 1972) ................................ 8

Am. Int'l. Group, Inc. v. London Am. Int'l Corp., 664 F.2d 348 (2d Cir. 1981) ....................... 7

Bristol-Myers Squibb Co. v. McNeil-P.P.C. Inc., 973 F.2d 1033 (2d Cir. 1992) ...................... 7

Burlington Coat Factory v. Malletier, No. 04 CV 2644, 2006 WL 1424381 (S.D.N.Y. May 23, 2006) .................................................................................................................. 7

Cache, Inc. v. M.Z. Berger & Co., No. 99 CIV. 12320, 2001 WL 38283 (S.D.N.Y. Jan. 16, 2001) ......................................................................................................................... 6

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) ............................................................................ 2

Derienzo v. Metro Transp. Auth., 404 F. Supp. 2d 555 (S.D.N.Y. 2005) .............................. 2, 3

Donahue v. Artisan Entm't, Inc., No. 00 CIV. 8326, 2002 WL 523407 (S.D.N.Y. Apr. 8, 2002) .............................................................................................................................. 5

Fed. Express Corp. v. Fed. Espresso, Inc., 201 F.3d 168 (2d Cir. 2000) ................................ 10

Gear, Inc. v. L.A. Gear California, Inc., 637 F. Supp. 1323 (S.D.N.Y. 1986) .......................... 3

Giannullo v. City of New York, 322 F.3d 139 (2d Cir. 2003) .................................................... 3

Grant v. City of New York, No. 91 Civ. 4266, 1992 WL 77562 (S.D.N.Y. Mar. 25, 1992) ........ 3

Gruner + Jahr USA Publ'g v. Meredith Corp., 991 F.2d 1072 (2d Cir. 1993) ...................... 6, 7

Hartz & Co. v. Italia, No. 97 Civ. 5657, 1998 WL 132787 (S.D.N.Y. Mar. 24, 1998) ............ 10

Hermes Intl. v. Lederer de Paris Fifth Ave., Inc., 219 F.3d 104 (2d Cir. 2000) ....................... 5

Himes v. Shalala, 999 F.2d 684 (2d Cir. 1993) .......................................................................... 2

Hormel Foods Corp. v. Jim Henson Prods., Inc., 73 F.3d 497 (2d Cir. 1996) ................ 3, 4, 10

IMS Ltd. v. Int'l Med. Sys., Inc., No. 84 Civ. 4126, 1986 WL 9692 (E.D.N.Y. June 30, 1986) .............................................................................................................................. 6

Info. Superhighway, Inc. v. Talk Am., Inc., 395 F. Supp. 2d 44 (S.D.N.Y. 2005) ..................... 3

Jada Toys, Inc. v. Mattel, Inc., 85 U.S.P.Q.2d 1895 (9th Cir. Feb. 21, 2008) ........................... 9

Lanvin, Inc. v. Colonia, 776 F. Supp. 125 (S.D.N.Y. 1991) ............................................................2, 3

Louis Vuitton Malletier v. Dooney & Bourke, Inc., 340 F. Supp. 2d 415 (S.D.N.Y. 2004)
    ("Vuitton I") ...........................................................................................................2, 3, 5, 9

Louis Vuitton Malletier v. Dooney & Bourke, Inc., 454 F.3d 197 (2d Cir. 2006) ("Vuitton
    II") ............................................................................................................................3, 5, 9

Mastercrafters Clock & Radio Co. v. Vacheron & Constantin-Le Coultre Watches, Inc.,
    221 F.2d 464 (2d Cir. 1955) ..........................................................................................8

Mead Data Central, Inc. v. Toyota Motor Sales, U.S.A., Inc., 875 F.2d 1026 (2d Cir.
    1989) ............................................................................................................................10

Mobil Oil Corp., v. Pegasus Petroleum Corp., 229 U.S.P.Q. 890 (S.D.N.Y. 1986) ...................8

Monahan v. New York City Dept. of Corrs., 214 F. 3d 275 (2d. Cir. 2000) ..............................3

Moseley v. Victoria Secret Catalogue, Inc., 537 U.S. 418 (2003) ...........................................9

Nabisco, Inc. v. PF Brands, Inc., 191 F.3d 208 (2d Cir. 1999) ...............................................6

Natural Organics, Inc. v. Nutraceutical Corp., 426 F.3d 576 (2d Cir. 2005) ..........................7

New York 10-13 Ass'n, Inc. v. City of New York, No. 98 Civ. 1425, 2000 WL 1376101
    (S.D.N.Y. Sept. 22, 2000) ..............................................................................................3

PAN AM v. Eclipse Holdings, No. 95 Civ. 2763, 1998 WL 205313 (S.D.N.Y. Apr. 27
    1998) .............................................................................................................................2

Playboy Enters. Inc., v. Chuckleberry Publ'g, Inc., 687 F.2d 563 (2d Cir. 1982) ...................8

Playtex Prods. v. Georgia-Pacific Corp., 390 F.3d 158 (2d Cir. 2004) ..............................9, 10

Polaroid Corp. v. Polarad Elecs. Corp., 287 F.2d 492 (2d Cir. 1961) .....................................7

PRL USA Holdings, Inc. v. U.S. Polo Ass'n, Inc., ___F. 3d___, No. 06-3691-CV, 2008
    WL 564970 (2d Cir. Mar. 4, 2008) ..............................................................................10

Resource Developers, Inc. v. The Statue of Liberty-Ellis Island Found., Inc., 926 F.2d
    134 (2d Cir. 1991) ..........................................................................................................7

Riley v. Town of Bethlehem, 5 F. Supp. 2d 92 (N.D.N.Y. 1998) ...............................................3

Savin Corp. v. Savin Group, 391 F.3d 439 (2d Cir. 2004) .......................................................5

Shaffer v. Domino's Pizza, No. 02-CV-3898, 2006 WL 355022 (E.D.N.Y. Feb. 15, 2006) ...2, 3

Sports Authority, Inc. v. Prime Hospitality Corp., 89 F.3d 955 (2d Cir. 1996) .......................7

T. Anthony, Ltd. v. Louis Vuitton Malletier, 30 U.S.P.Q. 2d 1214 (S.D.N.Y. 1993)...................6

Time Inc. v. Petersen Publ'g Co., 173 F.3d 117 (2d Cir. 1999) .......................................6

Versace S.p.A., v. Versace, No. 01 Civ-9645, 2003 WL 22023946 (S.D.N.Y. Aug. 27, 2003) ............................................................................................................3

Virgin Enters. Ltd. v. Nawab, 335 F.3d 141 (2d Cir. 2003) ............................................6


**STATUTES & RULES**

15 U.S.C. § 1125..............................................................................................9, 10

Fed. R. Civ. P. 37 ...................................................................................................9

Fed. R. Civ. P. 56 ...................................................................................................7

Fed. R. Evid. 106 ....................................................................................................9

Fed. R. Evid. 403 ....................................................................................................9

Fed. R. Evid. 701 ....................................................................................................9

On this motion, the core undisputed facts are these: D&B uses its own registered house mark; the It Bags are covered with that mark; D&B does not use L, V, or LV; D&B does not use any geometric design or any element of LV's Toile mark; D&B has sold millions of It Bags; and after four-plus years on the market competing with LV's Multicolore products, the instances of actionable confusion based on admissible evidence are zero. On this record, there is no genuine issue of material fact—confusion has never occurred in the real world despite colossal sales of both products, and thus there is no likelihood of confusion.

LV's dilution claim is equally defective. There is no admissible evidence demonstrating that there is a genuine triable issue regarding whether the LV Multicolore mark has been damaged as a unique LV source identifier. Faced with LV executives who testified that they could not find evidence of dilution, plaintiff now flip-flops as to whether it has any claim of lost sales, and argues that D&B competition in the U.S. caused an LV sales decline when the multicolor trend waned. This is desperation. No authority is cited by LV holding that a sales decline evidences or proves dilution of a trademark.

Nor is there proof of intent to deceive consumers about who made these products. Again, the It Bags are satiated with DB marks, adorned with "Dooney & Bourke" tags, and sold in D&B stores. Rather than dispute these facts, LV pretends that other kinds of purported deception—supposed fake It Girls and false wait lists—are enough to create a triable issue. They are not.

In opposing this motion, LV was required to cite admissible evidence sufficient to demonstrate genuine trial issues on the <u>material</u> facts LV must prove. LV did not. Instead, LV argues that because the standard for summary judgment is different from a preliminary injunction ("PI") standard, LV's "meaningless" emails are better and more admissible now than

they were in 2004. LV is wrong. LV's proof in 2004 was not evidence of actionable confusion or dilution, and it continues not to be. E.g., Vuitton I, 340 F. Supp. 2d at 441 (LV "failed to present any evidence suggesting confusion among actual consumers"). Yet LV's papers are still chock-full of "look alike" and "a la Louis Vuitton", as if that already-rejected evidence somehow improved with age. The Court is not bound by the findings made after the seven-day PI hearing, but it is entitled to consider the non-impact that LV's purported evidence had the first time around. Lanvin, Inc. v. Colonia, 776 F. Supp. 125, 127 (S.D.N.Y. 1991) ("In determining a motion for summary judgment, [a court] may consider . . . findings of fact and conclusions of law in a prior motion for preliminary injunction.").[1]

The bottom line is, having lost at the preliminary injunction stage and having completely abandoned the PI so that it could burden D&B with oppressive discovery, this motion was LV's chance to prove it now had new probative evidence that warrants a trial. All LV could come up with is three weakly-worded and inadmissible declarations by LV store employees, a sales drop-off when the fad ended, and Dr. Holub on color similarities that were apparent at the time of the PI. This meager proof does not entitle LV to a jury trial in the face of the undisputed fact that there has been no real world confusion or dilution after millions of these bags have been sold.[2]

---

[1] See also PAN AM v. Eclipse Holdings, 1998 WL 205313, at *1 (S.D.N.Y. 1998) (same); Shaffer v. Domino's Pizza, 2006 WL 355022, at *2 (E.D.N.Y. 2006) (adopting reasoning of court that earlier denied motion for preliminary injunction where there was "no new convincing evidence or argument show[ing] why summary judgment should not be granted"); Himes v. Shalala, 999 F.2d 684, 688 (2d Cir. 1993) (affirming grant of summary judgment against plaintiff who relied on the same arguments at the preliminary injunction stage).

[2] LV's claim that "summary judgment should be denied" and D&B's 56.1 statement should be rejected for citing to "this Court's and the Second Circuit's preliminary injunction findings" (Op. at 6, CSF at 1-2) lacks support. A defendant is allowed to argue that there is no admissible evidence supporting an element of a claim, which shifts the burden to the plaintiff to cite admissible evidence in response. Derienzo v. Metro Transp. Auth., 404 F. Supp. 2d 555, 558 (S.D.N.Y. 2005) ("[U]nder Celotex 'a defendant may move for summary judgment on the ground that the plaintiff has failed to adduce any evidence of an element of plaintiff's claim, and

A court must draw reasonable inferences in a nonmoving party's favor; it is not permitted to defer simply to speculation and conjecture without basis in fact or support in law, which is what LV repeatedly insists this Court must do. See Info. Superhighway, Inc. v. Talk Am., Inc., 395 F. Supp. 2d 44, 50 (S.D.N.Y. 2005). D&B's summary judgment motion should be granted.

## ARGUMENT

**Infringement:** LV admits the material facts concerning the time the bags have been on the market and the millions of units sold. LV cannot credibly deny that no consumer has attempted to return a D&B bag to LV; that there are numerous, fundamental differences between the parties' marks; and that D&B's It Bags are literally covered in D&B's house mark, are sold and advertised with the D&B name, and have "Dooney & Bourke" tags.[3]

LV claims to have "obtained additional actual confusion evidence since the preliminary injunction stage" (Op. at 21), but cites only the unauthenticated emails and press clippings used in 2004 and its meaningless store employee declarations created for this litigation. None of this proves confusion as to source or sponsorship of D&B's It Bags; indeed, the three store employee

---

if the plaintiff fails in response to contest this assertion or adduce such evidence, defendant, without more, will prevail'."). A fraction of D&B's fact paragraphs cite only to Vuitton I or Vuitton II for background facts or to show that certain findings based on the same evidence in the record have already been made; the Court may consider these findings, Lanvin, 776 F. Supp. at 128, and D&B views the fact that they were already made as probative of whether the same evidence is sufficient to create any genuine issue now. Shaffer, 1998 WL 426027, at *2. LV's cited cases in this Circuit involved instances where a party failed to submit a 56.1 (Derienzo; New York 10-13 Ass'n, Inc.; Grant; Gear, Inc.; Versace); the 56.1 did not contain any citations at all to evidence in the record (Monahan; Riley); or the statement of facts contained "affirmative" and "critical assertions" not supported by evidence in the record (Giannullo) (defendant police officers' material assertions of probable cause to arrest plaintiff must be supported by evidence in the record to support grant of summary judgment against plaintiff's § 1983 case).

[3] See Hormel Foods Corp. v. Jim Henson Prods., Inc., 73 F.3d 497, 503 (2d Cir. 1996) ("placement of the marks next to other identifying but dissimilar symbols is clearly relevant").

declarations indicate the few overheard customers <u>knew</u> the products came from separate and unaffiliated sources, and even knew the two companies by name.[4] (SF ¶¶ 38-40, 51-52, 58-65.)

LV separately cites an inadmissible comparison of Multicolore sales in the U.S. to sales in the rest of the world as purported evidence of confusion. (Op. at 12-13.) Not only does this comparison seriously mischaracterize the sales data on which it relies (see Cornell Decl.), it is utter speculation to argue from this data that LV lost U.S. sales because thousands of consumers were mistakenly walking into D&B stores and purchasing It Bags covered in D&B logos from D&B employees, all while thinking they were getting a genuine LV, thus driving LV sales down. As LV's counsel recognized, "there are a thousand reasons why sales might go up and down" (see 11/28/06 Tr. 20-21). Confused LV consumers buying It Bags by mistake is not one of them.

LV argues that perhaps some type of confusion other than "point of sale" may have occurred. (Op. at 20-21.) But LV has no admissible evidence demonstrating actual examples of "initial interest" or "post-sale" confusion either. Instead:

> "[LV] seeks to take advantage of the theories underlying initial interest and post-sale confusion indirectly to assert rights in a 'look.' To the extent that LV asserts that consumers are confused initially or in the post-sale context by the look of a multicolored bag from a distance (when the initials or designs on the bag are obscured), this confusion is being caused by the look of the bag, in which . . . LV has disavowed any trademark rights. Accepting LV's argument would lead to the absurd premise that its Multicolore Monogram trademark would be infringed by any bag with relatively the same color and shape of the LV handbag when viewed from a few blocks away—even a bag without any monograms at all. That is obviously an unacceptable result, making it critical to remember that LV may not in this action claim trademark rights in a 'look'." (R&R at 34.)

---

[4] Cf. Hormel, 73 F.3d at 506 (no evidence of actual confusion in newspaper articles mistakenly referring to defendant's character by plaintiff's product name because "in none of the articles [plaintiff] cites is the source or sponsorship of the two marks confused"). Similarly, purported confusion about who was first to market with the multicolored look is not evidence of confusion as to source or sponsorship, and LV cites no cases supporting that argument.

All LV's proferred evidence—including "look alike" and "very LV" and "a la Louis Vuitton"—shows at most that some people felt these products had a similar look or style; no LV evidence, old or new, suggests that anyone believed that <u>the trademarks</u> were confusingly similar.[5]

LV thus argues that "the 'look' is inseparable from the trademarks themselves" (Op. at 16). But the trademark here is not the look of the various handbags. It is the law of the case, and LV has judicially admitted, that LV does not and cannot assert trademark rights over "a look".[6] LV cannot expand what it has clearly defined as the precise "contours and limits" of its mark, <u>Vuitton II</u>, 454 F.3d at 115, by redefining that mark more vaguely or broadly now.[7]

LV next argues that it is still not necessary to show actual confusion; or that only a few instances might be enough "to raise a jury question". (Op. at 21-22.) The cases cited by LV are inapposite[8] and do not weaken the Second Circuit's clear instruction that "numerous" consumers

---

[5] The cases LV cites for its "non-point of sale" confusion argument are inapposite (Op. at 20-21). For example, <u>Hermes</u> involved a "replica" product where it was "clear" that the defendants "intentionally copied Hermes' designs and sought to sell knockoffs of Hermes originals" such that a "sophisticated buyer" could "purchase[] a knockoff and pass[] it off to the public as the genuine article"; here replicas are not involved and the only potential post-sale confusion offered apparently occurs in blurry videos or at cocktail parties in bad light.

[6] "[LV] has made numerous statements that this is <u>not</u> a trade dress case," <u>Vuitton I</u>, 340 F. Supp. 2d at 438 n.118, and LV "may not claim protection in a 'look'", R&R at 30-31 (citing <u>Vuitton I</u>, 340 F. Supp. 2d at 421) & 31 n.71 ("[LV] can't protect the look. We've gone over and over this."); <u>see also Vuitton II</u>, 454 F.3d at 115.

[7] <u>See</u> CSF ¶ 148 (claiming never-before-claimed rights in "the combination of the 33 colors arranged in horizontal and diagonal rows in a repeating pattern on black and white background colors"); Op. at 16 (claiming rights in a look). Relatedly, on the "similarity of the marks" factor, LV argues that there is "considerable evidence" showing that consumers "perceive a similarity between the marks"(Op. at 15), "including by consumers who do not have an opportunity to make a careful inspection" (CSF ¶ 315). Again, regardless of whether consumers "carefully inspect" the bags, none of the evidence cited by LV indicates similarity between <u>the marks</u> (design plus color) as opposed to similarities relating to an overall "look".

[8] The <u>Donahue</u> case involved actors suing a production company for using their likeness in a sequel where each plaintiff testified that numerous people had asked if they were in the sequel; it did not involve competing products that had coexisted on the market for years. <u>Savin</u> held that an "anecdote" of confusion was "<u>de minimus</u> evidence insufficient to raise triable issues" and concluded that the actual confusion factor was properly weighed in <u>defendant's</u> favor. The

5

must be confused, Time, Inc., 173 F.3d at 117; Virgin Enters., 335 F.3d at 146 ("a significant number"); Gruner + Jahr, 991 F.2d at 1077 ("probability" and not "possibility" must be shown); or that the absence of actual confusion serves as an increasingly "powerful" indication that D&B's mark "does not cause a meaningful likelihood of confusion" as the period grows longer and longer. Nabisco, Inc. v. PF Brands, Inc., 191 F.3d 208, 228 (2d Cir. 1999).[9]

LV's argument that "[t]he marks at issue here are analogous to those described in" the T. Anthony case is wrong (Op. at 15). That Court found an infringing "monogram design" consisting of "an interlocking 'T' and 'A,' a compass, and flower-shaped gold tooling" on a brown bag created a similar impression to LV's Toile pattern of LVs with a "flowered pattern" and a "compass-like geometric shape," but <u>specifically noted</u> that its finding did "not refer to the interlocking 'T' and 'A' appearing alone, which occurs on a variety of T. Anthony products". T. Anthony, 30 U.S.P.Q. 2d at 1215 n.1.[10] The TA mark <u>without</u> geometric designs is the only pattern that might be analogous to D&B's logo; and thus T. Anthony is of no help to LV.[11]

---

Cache case had five instances of actual confusion, three of which involved people attempting to return the defendant's products to the plaintiff, which never occurred here. The IMS case was not a summary judgment decision and involved "great" similarity between marks.

[9] LV's vague and unsupported accusation about D&B allegedly failing to preserve unspecified evidence (Op. at 19, 23, CSF ¶ 42) is a gambit pursued by LV last year in the S-Lock case; LV failed there and thus did not attempt to make such an argument here. See 12/22/06 S-Lock Order at 8 ("[P]laintiff offers not a shred of evidence suggesting that any documents (pertinent or otherwise) were destroyed."). LV also asks this Court to consider LV's allegation in S-Lock that on a tiny number of bags designed and manufactured entirely by a different company but sold by D&B, a lock was once used that was similar in shape to the one used by LV, but without the "LV" engravings that are shown in LV's mark (Op. at 10 n.3). These long-mooted allegations in a separate case have not been litigated here and have never been proven by LV. Moreover, LV's mark in S-Lock is subject to the defense that LV repeatedly defrauded the PTO about LV's use of the lock.

[10] Every case cited by LV where it asserted its Multicolore marks in litigation and obtained relief involved bags featuring imitations of the design elements of LV's Toile; none involved a single, repeating, colorized monogram like D&B's. (See Berteaux Decl. Ex. A at A2.) LV again admits that "Dooney does not sell products under a mark that resembles the Toile Monogram mark". (Cardon Decl. ¶ 21.) Thus, LV's only genuine complaint about the It Bags is alleged

6

LV also argues that D&B consumers are not sophisticated and cites the "teen" market for D&B's It Bags (Op. at 22-23), but fails to cite evidence to support its speculation that high-end teenage handbag shoppers (notoriously brand-conscious) are somehow "unsophisticated".[12]

LV tries hard to create an issue of fact on whether there has been intent to deceive consumers. <u>Resource Developers, Inc. v. The Statue of Liberty-Ellis Island Foundation, Inc.</u>, is instructive; there, the plaintiff argued that it had presented "circumstantial evidence" of "deliberate deception" that "include[d] a long pattern of conduct including the similarities in [the products]". 926 F.2d 134, 141 (2d Cir. 1991). The Second Circuit held:

> "This creative attempt to link events and acts in order to ascribe to [defendant] a bad motive rests only upon speculation and conjecture. We have not hesitated to affirm a summary judgment when the only proof proffered in opposition amounts to nothing more than speculation and conjecture. The fact that the defendant's state of mind is in issue does not alter the result where only speculative allegations are offered to demonstrate the existence of state of mind after ample opportunity to engage in relevant discovery." <u>Id.</u> (internal citations omitted).

---

color similarity, and not the horizontal rows or the repeating monogram patterns, which LV concedes are used in noninfringing D&B Signature Collection products.

[11] A "dispute" based on LV's denials does not create a genuine issue of fact, see Fed. R. Civ. P. 56(e)(2); only specific facts do that. The cases LV cites for the claim that "a dispute" as to differences in the marks means a "jury must decide this issue" do not support LV's point. The <u>Sports Authority</u> court reversed a summary judgment grant because it disagreed with the district court's drawing of inferences on the entire <u>Polaroid</u> analysis; it did not conclude that summary judgment was improper due only to an issue on the similarity of the marks factor. <u>Natural Organics</u> held that a bench trial ruling had to be reversed because the court failed to make a finding on each of the <u>Polaroid</u> factors; <u>AIG</u> found that the court had "tried the issues himself" and ignored <u>material</u> disputed facts. LV's support for its claims on whether D&B's marks "call to mind" LV's is <u>Burlington</u>, which does not say a jury must decide the issue. Moreover, <u>Burlington</u> involved both trademark and trade dress claims; the language LV cites references the "look", meaning the trade dress of a product, and is thus off-point. (<u>Cf.</u> R&R at 33.)

[12] As a whole, LV's opposition ignores the fact that the <u>Polaroid</u> factors are merely a tool to resolve the ultimate issue of likelihood of confusion; their application is flexible. See <u>Bristol-Myers Squibb</u>, 973 F.2d at 1044; <u>Gruner + Jahr</u>, 991 F.2d at 1077; see also Br. at 5. LV places undue emphasis on factors that are not highly relevant in this case and argues there are minor disputed issues even when they are not probative of whether confusion is likely to occur. Here, the obvious differences in the marks with the absence of admissible or credible evidence of actual confusion after millions of sales over four years confirms that no trial is necessary to determine if confusion is likely to occur.

7

LV's accusations about D&B's "orchestrated plan" of deceit relating to "smokescreens", "false wait lists", and the "off-seasonal timing" (Op. at 2; CSF ¶¶ 297-310) are nothing more than a "creative attempt" to create some issue, any issue, relating to Mr. Dooney's intent.

But the only relevant issue is whether D&B "attempted to deceive consumers" about who made the It Bags; in 2004 LV had "absolutely no proof" of that. Vuitton I, at 447. The probative evidence on that question has not changed or improved. It remains undisputed that the It Bags are covered in D&B logos and have prominent "Dooney & Bourke" tags. The only "new evidence" on the core issue is that the partial color similarity LV cited in 2004 is now expertised; but even Dr. Holub cannot change the undisputed fact that all D&B did was colorize its own registered mark that has long signified D&B as the source of the goods. We are aware of no case where colorizing a house mark has been found to create a jury issue on intent to deceive.[13]

**Dilution:** LV argues that evidence of competition by D&B (e.g., consumers expressing a preference for either bag or noting D&B's better price) is evidence of dilution. LV is wrong. Dilution is damage—a diminution—to a mark's ability to source-identify, e.g., R&R at 43; consumers liking the It Bags better, or being able to afford them, is simply not evidence of that.[14]

LV's dilution evidence ("very LV", "a la LV", "poor man's LV") describes, at best, mere associations drawn between the looks of the companies' products—not the marks, as expressly

---

[13] LV's willful deceit cases are inapposite. In A.T. Cross, defendant's ads described its product as looking like the plaintiff's product to "persuad[e] purchasers that their donees would think they were receiving [plaintiff's] pens". In Mastercrafters, defendant intentionally failed to add distinguishing features to its imitation of plaintiff's clock so that customers could pass it off as the expensive clock, and customers had inquired with plaintiff about where to find "the lower priced" version of its expensive clock. In Mobil Oil, there was a "great similarity between the marks", which were found to be "synonymous" (both were "Pegasus"). Playboy involved two magazines with substantively identical names and subjects ("Playboy" and "Playmen").

[14]

required by the TDRA, 15 U.S.C. § 1125(c)(B). LV also agrees that mere mental association is insufficient under Moseley to establish actual dilution (Op. at 12), confirming that by again relying on its old "association" e-mails and articles, LV "has not offered any evidence of actual dilution", Vuitton II, 454 F.3d at 119, and has foreclosed recovery of any damages on its dilution claim (Br. at 14-15).

Likewise, LV's new "sales decline" analysis mischaracterizes the data upon which it relies (see Cornell Decl.) and suffers from the fatal flaws that infected Anson's opinions based on the same sales data; more fundamentally, it is "at odds with the substantive law of dilution".[15] (R&R at 161.) "Courts have considered a variety of factors to determine whether a defendant's trademark has diluted or is likely to dilute a plaintiff's trademark by blurring, see, e.g., Vuitton I, 340 F. Supp. 2d at 437, and the law currently identifies six factors", none of which include lost sales, and "[none] of the blurring factors previously considered by courts in this circuit refer to a decline in the plaintiff's sales". (R&R at 161-62.) LV cites no case to counter this point.

Nor does LV have a good answer to the point that "a plaintiff cannot prevail on a state or federal dilution claim unless the marks at issue are 'very' or 'substantially similar'", Playtex, 390 F.3d at 167. Instead, LV argues that, even with fundamental differences, similarity of marks should be a jury question.[16] (Op. at 8.) In fact, summary judgment can be appropriate where the

---

[15] Even if not excluded under Fed. R. Civ. P. 37(c)(1), the newly-disclosed Cardon summary of data on relative Multicolore sales trends and Cardon's opinion on what it shows are inadmissible under Fed. R. Evid. 106, 701, and 403. (Cf. R&R 157-58.)

[16] Notably, in the Jada Toys case cited by LV (Op. at 9), the court found plaintiff's expert surveys evidenced actual dilution because "they do more than indicate that consumers associate one mark with the other; they suggest that [plaintiff's] Hot Wheels mark does not adequately identify its product because [defendant] is able to convey, through the use of its Hot Rigz mark, the impression that [plaintiff] either produced or allows the production of Hot Rigz". Jada Toys, 85 U.S.P.Q.2d at 1901. Here, LV's surveys were rejected as defective and non-probative of dilution; and LV's "association" email evidence does not suggest that even one consumer believed LV made or sponsored the It Bags.

differences between the marks make clear that "plaintiff cannot demonstrate the requisite similarity to sustain a dilution claim". <u>Playtex</u>, 390 F.3d at 167; <u>Hormel Foods</u>, 73 F.3d at 506 (dissimilarity of marks "alone" could defeat dilution claim); <u>Mead</u>, 875 F.2d at 1030 (LEXIS and LEXUS not sufficiently similar); <u>Hartz & Co. v. Italia</u>, 1998 WL 132787, at *1 (S.D.N.Y. 1998) (same, "Tallia" and "Italia Menswear Outlet").[17]

LV claims that D&B's federal registration of its "DB" logo cannot preclude LV's dilution claim because of a prior ruling by this Court. But that ruling clearly related to asserting this defense as to <u>infringement</u>, where registration is not a complete defense; it did not apply to <u>dilution</u>, where federal registration acts as a "complete bar" to "any claim of actual or likely damage or harm to the distinctiveness or reputation of a mark". 15 U.S.C. § 1125(c)(6); <u>see</u> 8/7/07 Order ("While valid registration of the Dooney mark is not a complete defense, the Court will appropriately charge the jury that it may consider the facts supporting this defense when determining <u>whether Dooney has infringed</u> on [LV's] mark") (emphasis added).[18]

Finally, D&B's injunction argument is not "novel"; LV cannot prevail without a showing of irreparable harm. Moreover, "[t]he seeming lack of urgency on the part of a plaintiff who has been denied interim relief tends to confirm the view that irreparable harm was not imminent". <u>Fed. Express Corp. v. Fed. Espresso, Inc.</u>, 201 F.3d 168, 178 (2d Cir. 2000).

---

[17] LV misleadingly quotes the dilution statute for the proposition that "the district court must consider 'all relevant factors' identified in" the statute in determining likelihood of dilution. (Op. at 8.) In fact, the statute states that "the court <u>may</u> consider all relevant factors". 15 U.S.C. § 1125. Here, the obvious differences in the marks should be dispositive.

[18] LV's repeated argument that a strong mark gives LV extra protection and compels others to avoid infringing by safe distance (Op. 13-14) is simply wrong. There is no enhanced "safe distance" standard for finding infringement in this Circuit, even for a prior infringer. <u>PRL USA Holdings, Inc. v. U.S. Polo Ass'n, Inc.</u>, 2008 WL 564970, at *7 (2d Cir. 2008).

Dated: April 7, 2008

        Respectfully submitted,

        CRAVATH, SWAINE & MOORE LLP

        By
          /s/   Douglas D. Broadwater
                Douglas D. Broadwater
                Roger G. Brooks
                Darin P. McAtee
                Members of the Firm
            Worldwide Plaza
              825 Eighth Avenue
              New York, NY 10019
                (212) 474-1000

                -and-

        THOMAS J. McANDREW & ASSOCIATES
            Thomas J. McAndrew, Esq.
            One Turks Head Place, Suite 205
            Providence, RI 02903
            (401) 455-0350

        *Attorneys for Defendant Dooney & Bourke, Inc.*